UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| LINDA O'HARA, *as Administratrix of the Estate of Phillip O'Hara*, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 6:23-CV-026-CHB |
| v. | ) ) | **MEMORANDUM OPINION &** |
| LAUREL COUNTY CORRECTIONAL CENTER, et al., | ) ) ) | **ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a Motion to Dismiss, Bifurcate, and Hold in Abeyance by Defendants Laurel County Correctional Center ("LCCC"); Laurel County, Kentucky ("Laurel County"); Jamie Mosley, in his individual and official capacity; Nurse Chastity King, in her individual and official capacity; and Certain Unidentified Employees of LCCC (collectively, the "Defendants"). [R. 7]. Plaintiff Linda O'Hara, as Administratrix of the Estate of Phillip O'Hara, filed an Amended Complaint [R. 10] before responding [R. 11] to the Defendants' motion. The Defendants replied. [R. 13]. The Court then ordered supplemental briefing to clarify the claims that remain in dispute in light of Plaintiff's Amended Complaint, [R. 14], and the parties complied, [R. 15]; [R. 16].  The matter is now ripe for consideration. For the reasons that follow, the Court will **GRANT** the Defendants' motion in part and **DENY** it in part.

## I.       BACKGROUND

Phillip O'Hara was an inmate at the LCCC Center at the time of his death on October 21, 2021. [R. 10 (First Amended Complaint), p. 4]. Plaintiff Linda O'Hara, Administratrix of the

Estate of Phillip O'Hara,[1] suggests her late husband's death was due to the Defendants' failure to provide him adequate medical care. On February 3, 2023, Plaintiff brought this action in Laurel County Circuit Court, alleging violations of KRS § 71.040; negligence and gross negligence; civil rights violations pursuant to 42 U.S.C. § 1983; negligent hiring, training, and supervision; negligent and intentional infliction of emotional distress; and a variety of damages. *See generally* [R. 1-1].

Defendants removed this action to federal court on February 22, 2023. *See* [R. 1 (Notice of Removal)]. Shortly thereafter, on February 28, 2023, Defendants moved to dismiss Plaintiff's Complaint, arguing "the claims are either redundant, barred by sovereign immunity, insufficiently pled, or fail to assert a cause of action." [R. 7-1, p. 1]. Plaintiff then filed an Amended Complaint on March 20, 2023, within the time contemplated by Federal Rule of Civil Procedure 15(a)(1)(B). [R. 10].

Plaintiff's Amended Complaint sets forth the following causes of action: Violations of KRS 71.040, as actionable through KRS 446.070 (Count I) against all Defendants; medical negligence and gross negligence (Count II) against Nurse King and unnamed medical personnel of LCCC; intentional infliction of emotional distress (Count III) against all Defendants; "cruel and unusual punishment in violation of Section 17 of the Kentucky Constitution, the Eighth, Tenth and Fourteenth Amendments to the Constitution of the United States and state and federal statutory and regulatory proscriptions," as actionable under 42 U.S.C. § 1983 (Count IV) against all Defendants; negligence for failure to adequately staff (Count V) against Defendant Mosley;

---

[1] For the sake of clarity, the Court will, throughout this Order, refer to Plaintiff Linda O'Hara as "Plaintiff" and decedent Phillip O'Hara as "O'Hara."

"inadequate training/failure to train" (Count VI) against Defendant Mosley; negligent infliction of emotional distress (Count VII) against all Defendants; negligent supervision (Count VIII) against Defendant Mosley; and damages (Count IX).

## II.    STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing

*Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)). Further, "[i]n judging the sufficiency of the complaint [the Court is] bound to indulge in all reasonable inferences which might be drawn therefrom." *Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).

### III.   ANALYSIS

#### A.  Motion to Dismiss

In their Motion, Defendants first move to dismiss as redundant Plaintiff's Section 1983 claims in Count IV against LCCC and its employees in their official capacities. [R. 7-1, p. 4]. Defendants also seek dismissal of Plaintiff's state law tort claims in Counts II, III, V, and VII against Laurel County, LCCC, and Defendants Jamie Mosley and Nurse Chastity King in their official capacities because they are barred by sovereign immunity. *Id.* Next, Defendants move to dismiss Count I of Plaintiff's Complaint, violations of KRS § 71.040, against any "non-jailer" Defendants, and to dismiss Counts III and VII, intentional and negligent infliction of emotional distress, against all Defendants. *Id.* at 5. Defendants further contend that all claims against Defendants King and Mosley should be dismissed because they are insufficiently pled. *Id.* at 6. Lastly, Defendants suggest Count IX must be dismissed "because it is seeking a remedy, not a separate claim for relief." *Id.* at 7.

In light of Plaintiff's Amended Complaint [R. 10], however, Defendants concede that "Counts I and IV are now sufficiently pled." [R. 13, p. 2]. The Court will therefore deny Defendants' request to dismiss Count I against Defendant Mosley and Count IV against all Defendants as moot. In addition, Plaintiff acknowledges in her response that "[t]he defendants' Arguments I-III are well taken and serve to streamline the litigation." [R. 11, p. 1]. Accordingly, the Court will grant Defendants' request to dismiss Plaintiff's Section 1983 claims (Count IV) against LCCC and its employees in their official capacities; Plaintiff's state law tort claims (Counts

II, III, V, VI, VII, and VIII) against Laurel County, LCCC, and Defendants Mosley and King in their official capacities; and Plaintiff's KRS § 71.040 claims (Count I) asserted against all Defendants except Mosley in his official capacity.

In addition, Defendants argue Count IX of Plaintiff's Amended Complaint must be dismissed "because damages are a remedy and not a separate cause of action." [R. 13, p. 4] (citing *Johnson v. BLC Lexington SNF, LLC*, No. CV 5:19-064-DCR, 2019 WL 2476739, at *11 (E.D. Ky. June 13, 2019) ("[T]o the extent that 'causation and damages' is asserted as a separate cause of action, it will be dismissed."). In her supplemental response, Plaintiff concedes "Count IX contains much of the same information as the prayer for relief and may be dismissed." [R. 15, p. 4]. The Court will therefore grant Defendants' request and dismiss Count IX of the Amended Complaint against all Defendants.

In such a posture, there remains a justiciable dispute between the parties concerning Count II, Plaintiff's medical negligence and gross negligence claims against Defendant King in her individual capacity and against unnamed medical personnel at LCCC; Count V, Plaintiff's negligent staffing claim against Defendant Mosley in his individual capacity; Count III, intentional infliction of emotional distress against Defendants Mosley and King in their individual capacities and unnamed medical personnel at LCCC; Count VII, negligent infliction of emotional distress against Defendants Mosley and King in their individual capacities and unnamed medical personnel at LCCC; and Counts VI and VIII, negligent training and supervision of Defendant King against Defendant Mosley. The parties confirmed that these claims remain in dispute and reiterated all their previous arguments in their supplements. [R. 15]; [R. 16]. The Court considers each in turn.

   1. **Medical Negligence and Gross Negligence (Count II) and Negligence for Failure to Adequately Staff (Count V)**

A plaintiff alleging a medical negligence claim under Kentucky law "must 'prove that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused injury or death.'" *Rice v. Bourbon Cmty. Hosp., LLC*, No. CV 5:22-282-DCR, 2022 WL 17407959, at *3 (E.D. Ky. Dec. 2, 2022) (quoting *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982)). Expert testimony is typically required "to show that the defendant medical provider failed to conform to the standard of care." *Love v. Walker*, 423 S.W.3d 751, 756 (Ky. 2014). "To that end, state law requires that a plaintiff alleging medical negligence 'file a certificate of merit with the complaint in the court in which the action is commenced.'" *Rice*, 2022 WL 17407959, at *3 (quoting Ky. Rev. Stat. Ann. § 411.167(1)).

A compliant certificate of merit is an affidavit or declaration attesting that the plaintiff consulted with a qualified expert "who has concluded—after review and consultation—that there is a reasonable basis to bring the action." *Evans v. Baptist Health Madisonville*, 643 S.W.3d 105, 107 (Ky. Ct. App. 2022) (citing Ky. Rev. Stat. Ann. § 411.167(2)(a)). Failure to adhere to the requirements set forth in the statute with respect to claims for which it is implicated "is grounds for dismissal." *Cleaver v. S. Health Partners, Inc.*, No. 3:21-CV-747-BJB-CHL, 2022 WL 1620626, at *2 (W.D. Ky. May 23, 2022); *see also Dumphord v. Gabriel*, No. CV 5:20-461-DCR, 2021 WL 3572658, at *5–6 (E.D. Ky. Aug. 12, 2021) ("Dumphord's . . . noncompliance with Section 411.167's requirements warrant dismissal of his [negligence] claim against Bourbon Community.").

As relevant here, KRS § 411.167, titled "Certificate of merit for medical malpractice actions," provides:

> (1) A claimant commencing any action identified in KRS 413.140(1)(e), or against a long-term-care facility as defined in KRS 216.510 alleging that the long-term-care facility failed to provide proper care to one (1) or more residents of the facility,

shall file a certificate of merit with the complaint in the court in which the action is commenced.

(2) "Certificate of merit" means an affidavit or declaration that:

(a) The claimant has reviewed the facts of the case and has consulted with at least one (1) expert qualified pursuant to the Kentucky Rules of Civil Procedure and the Kentucky Rules of Evidence who is qualified to give expert testimony as to the standard of care or negligence and who the claimant or his or her counsel reasonably believes is knowledgeable in the relevant issues involved in the particular action, and has concluded on the basis of review and consultation that there is reasonable basis to commence the action.

Ky. Rev. Stat. Ann. § 411.167(1), (2). The statute contains certain exclusions or exceptions, including, under subsection (5), where a claimant has requested medical records but has not yet received them:

(5) If a request by the claimant for the records of the claimant's medical treatment by the defendants has been made and the records have not been produced, *the claimant shall not be required to file a certificate of merit under this section until ninety (90) days after the records have been produced*. For purposes of this section, "records" includes but is not limited to paper or electronic copies of dictations, video recordings, fetal heart monitor strips, and imaging studies.

*Id.* at § 411.167(5) (emphasis added).[2]

With respect to Plaintiff's claims for medical negligence and gross negligence in Count II and her claim for negligent staffing in Count V, Defendants submit that the Amended Complaint contains new facts "at odds with the Certificate of Merit filed with the original Complaint." [R. 13, p. 2]. Defendants contend Plaintiff's Certificate of Merit, filed alongside her original

---

[2] Though not relevant here, the statute provides for alternative methods of compliance by filing an affidavit attesting: (1) that the plaintiff was unable to consult with an expert before time expired to bring the action, and supplementing that affidavit with a certificate of merit within the following 60 days, *see* Ky. Rev. Stat. Ann. § 411.167(2)(b); (2) that she "made at least three . . . separate good-faith attempts with three . . . different experts to obtain a consultation and that none of those contacted would agree to a consultation [] so long as none of those contacted gave the opinion that there was no reasonable basis to commence the action," *id.* at § 411.167(2)(c); or (3) that a certificate of merit is unnecessary because "no cause of action is asserted for which expert testimony is required." *Id.* at § 411.167(4).

Complaint, is insufficient because Plaintiff "does not affirm she does not have any records to file a certificate of merit, . . . but merely states she does not have a 'complete' set of records." [R. 13, p. 2]. Because KRS 411.167(2) "does not hinge on the completeness of records but is required any time a plaintiff brings a medical negligence action against an individual or entity based on any records," Defendants argue "Plaintiff cannot rely on KRS 411.167(5) to evade providing the certificate of merit required under KRS 411.167(2)(a)." *Id.* Defendants arguments are meritless for multiple reasons.

As an initial matter, the Court is not convinced that a Certificate of Merit pursuant to KRS § 411.167 is required for either of Plaintiff's negligence claims in Count II or Count V. Whether KRS § 411.167's certificate of merit is required for these claims appears to be a question that has not been squarely addressed by Kentucky courts, and neither party cites case law addressing this issue. As in any case of statutory interpretation, the Court begins with the plain language of the statute. *See Barnett v. Central Ky. Hauling, LLC,* 617 S.W.3d 339, 341–42 (Ky. 2021) ("We must first look to the plain language of the statute to 'ascertain and give effect to the intent of the General Assembly.' Only if the language is unclear do we consider the legislatures' unspoken intent, the statute's purpose, and the broader statutory scheme.").

A Certificate of Merit is required by KRS 411.167 in "any action identified in KRS 413.140(1)(e)" or "against a long-term-care facility as defined by KRS 216.510[.]" Ky. Rev. Stat. Ann. § 411.167(1). This action clearly does not involve a long-term-care facility, so only KRS 413.140(1)(e) could possibly be implicated. That statute governs actions "against a physician, surgeon, dentist, or hospital licensed pursuant to KRS Chapter 216, for negligence or malpractice." Ky. Rev. Stat. Ann. § 413.140(1)(e).

First, LCCC is not a "hospital licensed pursuant to KRS Chapter 216." *Id.* Further, with respect to Plaintiff's negligence claim for inadequate staffing against Defendant Mosley in Count V, the plain language of KRS 413.140(1)(e) makes clear a Certificate of Merit is not required. Mosley, as Jailer of LCCC, is not a "physician, surgeon, dentist, or hospital." *Id.* And Plaintiff's claims against Mosley in Count V are for ordinary negligence in staffing, not for medical negligence or medical malpractice. "Where there is no ambiguity in a statute, there is no need to resort to the rules of statutory construction in interpreting it. The words of the statute are simply accorded their commonly understood meaning." *Stewart v. Estate of Cooper*, 102 S.W.3d 913, 915–16 (Ky. 2003) (quoting *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 229 (Ky. 1989)). "A fundamental canon of statutory [and regulatory] construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Lee v. Haney*, 517 S.W.3d 500, 503–04 (Ky. Ct. App. 2017) (quoting *Rosen v. Commonwealth, Pub. Prot. Cabinet, Dept. of Fin. Inst.*, 451 S.W.3d 669, 674 (Ky. Ct. App. 2014)) (brackets in original). The Court finds a Certificate of Merit is not required for Count V against Jailer Mosley because he is not one of the expressly enumerated health care professionals listed in KRS 413.140(1)(e). Rather, he is the Jailer of LCCC being sued in Count V for general negligence in staffing the facility. The Court will therefore deny Defendants' request to dismiss Count V of Plaintiff's Amended Complaint.

Turning to Plaintiff's medical negligence and gross negligence claims against Nurse King and unnamed medical personnel at LCCC in Count II, the issue is a little closer call. Again, LCCC is clearly not a long-term-care facility, leaving only KRS § 413.140(1)(e) for consideration. *See* KRS § 411.167(1). But the correctional center is also not a "hospital licensed pursuant to KRS Chapter 216," and Plaintiff has named no medical providers that might be "physician[s],

- 9 -

surgeon[s], or dentist[s]." KRS § 413.140(1)(e). Nurse King is the only medical provider specifically identified in Plaintiff's Amended Complaint, and the plain language of KRS 413.140(1)(e) does not include "nurse." *See Mattingly v. Jewish Hosp.*, No. 2021-CA-1353-MR, 2023 WL 128660, at *1–2 (Ky. Ct. App. Jan. 6, 2023) (allowing claims to proceed against hospital's physical therapist although "physical therapists" not included among list of medical providers to which the statute applies because the "case involve[d] a claim of 'negligence' against a 'hospital licensed pursuant to KRS 216'"). Further, the statutory language is devoid of any indication that the list of covered medical professionals should be construed expansively. The statute includes no words (such as "including but not limited to") indicating the list of enumerated medical professionals is exemplary and not exhaustive. Accordingly, the Court questions whether a Certificate of Merit is even required for Plaintiff's claims against Nurse King in Count II.

But even if Plaintiff's medical negligence and gross negligence claims in Count II fall under KRS 413.140(1)(e) and thus require a Certificate of Merit, the safe harbor of KRS 411.167(5) is plainly implicated. Plaintiff's counsel tendered a "Certification Pursuant to KRS 411.167" with the original Complaint that reads:

> I, R. Scott Madden, the undersigned counsel, pursuant to KRS 411.167, have reviewed the facts of the case, and hereby swears, affirms, and states as follows:
>
> 1. I requested a complete copy of the medical records for Phillip O'Hara, but was not supplied with a complete copy.
> 2. To date, a complete copy of the medical records for Phillip O'Hara have not been provided to me.
>
> I solemnly affirm, under penalty of perjury, that the foregoing statements made by me are true and correct.

[R. 13-1, pp. 2–3]. In her supplemental response, Plaintiff explains that any deficiency in this Certification is the result of Defendants' failure to turn over O'Hara's medical records. *See* [R. 15,

p. 3] ("In this instance, the Plaintiff did not receive any records from the occurrence at issue. Our record was supplied prior to the incident and there is no indication of why no other records were given. The Plaintiff cannot get a review without the records. . . . Plaintiff is entitled to a complete copy of the record or affirmation stating they do not exist so the expert can review that for a breach of the standard of care.").

Defendants admit they are withholding O'Hara's medical records "because discovery has yet to occur." [R. 13, p. 3 n.1]. The Court questions whether Defendants may withhold O'Hara's own medical records from the administratrix of his estate. But putting that issue aside for purposes of this analysis, the Defendants should plainly recognize that their failure to provide O'Hara's medical records would entitle Plaintiff to KRS 411.167(5)'s safe harbor. Again, that section specifically provides that, "[i]f a request by the claimant for the records of the claimant's medical treatment by the defendants has been made and the records have not been produced, the claimant *shall not be required to file a certificate of merit under this section until ninety (90) days after the records have been produced*." Ky. Rev. Stat. Ann. § 411.167(5) (emphasis added). Incredibly, Defendants first argue that because Plaintiff apparently has *some* medical records, she is required to file a Certificate of Merit pursuant to KRS § 411.167(1), (2), even though Defendants admit they have not yet produced the medical records. [R. 13, p. 3 n.1]; [R. 16, p. 4]. Citing no relevant authority, Defendants argue Plaintiff is not entitled to a "complete" set of medical records before the Certificate of Merit under subsection (2)(a) is required. Although the Court need not resolve that precise issue, the statute's plain language concerning what medical records are required before a Certificate of Merit is triggered is expansive. KRS § 411.167(5) provides, "For purposes of this section, 'records' *includes but is not limited to* paper or electronic copies of dictations, video recordings, fetal heart monitor strips, and imaging studies." Ky. Rev. Stat. Ann. § 411.167(5)

(emphasis added). Given Defendants' admission that they have not produced *any* of O'Hara's medical records, [R. 13, p. 3, n. 1] ("Because discovery has yet to occur, to their knowledge, Defendants have not provided Plaintiff with Mr. O'Hara's medical records."), the statute plainly provides that Plaintiff is not obligated to file a Certificate of Merit until "90 days after the records have been produced." Ky. Rev. Stat. Ann. § 411.167(5).

In their supplemental reply, Defendants appear to acknowledge that Section 411.167(5)'s safe harbor could apply in this case but continue to dig their heels in, arguing, without citation to authority, that "[i]f Plaintiff required more time to obtain a complete set of records, and therefore an expert review, she could have relied on KRS § 411.167(5) at the time she filed her original complaint . . . but went ahead and filed, without a *sufficient* Certificate of Merit, an Amended Complaint based on the medical records in her possession." [R. 16, p. 4] (emphasis added). First, the plain language of subsection (5) makes clear that a claimant who has requested medical records but has not received them is not initially required to file a "sufficient" Certificate of Merit, or one at all. Rather, the claimant has until 90 days after the medical records are produced to file a compliant Certificate of Merit. *See* Ky. Rev. Stat. Ann. § 411.167(5). Further, the "Certification Pursuant to KRS 411.167," [R. 13-1, pp. 2–3], that Plaintiff did file clearly evinces Plaintiff's intent to rely on KRS § 411.167(5) and plainly put Defendants on notice that Plaintiff was relying on the safe harbor under subsection (5), given Defendants' failure to produce O'Hara's medical records.

In sum, the Court finds that *if* a Certificate of Merit is required for Plaintiff's claims against Nurse King and unnamed medical personnel at LCCC in Count II, Section 411.167(5)'s safe harbor applies, and she need not file the certificate until ninety days after Defendants produce O'Hara's medical records.

- 12 -

Although the Court will deny the Motion to Dismiss concerning Counts II and V for the reasons stated above, it will do so without prejudice and with leave to re-file. As outlined, the Court questions whether KRS 411.167(1)'s Certificate of Merit requirement is implicated at all with respect to Count II and Count V. In that case, Plaintiff would not be required to file a Certificate of Merit even after Defendants produce O'Hara's medical records. That said, the parties failed to address these issues, and the Court will therefore give them an opportunity to brief the issues should Defendants elect to renew their motion to dismiss concerning Count II and/or Count V. Accordingly, if, upon further review, Defendants still maintain that a Certificate of Merit is required with respect to Plaintiff's claims in Count II and Count V, they may file a renewed motion to dismiss concerning Count II and/or Count V only. Normal response and reply times shall apply. Any renewed motion must be properly supported by relevant case law and shall address whether the certificate is required, and, if so, whether 411.167(5)'s safe harbor applies. Defendants shall also address whether O'Hara's medical records in their possession have been provided to Plaintiff at this juncture. If the Defendants elect not to renew their motion to dismiss with respect to Count II and/or Count V within thirty days, the Court will construe the lack of a renewed motion to dismiss as conceding that a Certificate of Merit is not required for Count II and/or Count V under the facts of this case.

### 2. Intentional and Negligent Infliction of Emotional Distress (Counts III and VII)

Defendants next argue that Counts III and VII—intentional and negligent infliction of emotional distress, respectively—of Plaintiff's Amended Complaint must be dismissed against all Defendants because they are gap-filler claims that only provide a remedy where others are unavailable. [R. 13, p. 5]. Defendants therefore urge that "Plaintiff should be limited to recover emotional distress damages only under the alleged constitutional and common law tort claims."

*Id.* In response, Plaintiff posits that "[t]hese torts are plead in the alternative and should not be dismissed at this stage. No discovery has taken place and as the defendant admits, they should only be dismissed if redress for emotional distress is available." [R. 11, p. 2].

Kentucky generally treats intentional infliction of emotional distress as a "gap-filler" claim, which, as Defendants note, "is not available if 'an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed.'" *Estep v. Combs*, 366 F. Supp. 3d 863, 886–87 (E.D. Ky. 2018) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298–99 (Ky. Ct. App. 1993)). And, "[i]n the absence of guidance from Kentucky state courts, federal district courts in Kentucky have extended the [same] logic . . . to [negligent infliction of emotional distress] claims." *Profitt v. Highlands Hosp. Corp.*, No. CV-7:19-15-KKC, 2022 WL 1275632, at *9 (E.D. Ky. Apr. 28, 2022) (counting cases). It is well settled, however, that a plaintiff may plead claims in the alternative so long as she does not recover twice for the same harm. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); *Boardman Steel Fabricators, Ltd. v. Andritz, Inc.*, No. CIV. 14-2-GFVT, 2014 WL 2159743, at *1 (E.D. Ky. May 23, 2014)*Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016) ("Rule 8(a)(3) permits pleadings in the alternative[.]"); *Roach v. Hedges*, 419 S.W.3d 46, 49 (Ky. Ct. App. 2013) (noting "[p]leading in the alternative is of course a standard legal practice").

Other courts in this district have denied similar arguments as raised by the Defendants here. In *Thurman v. City of Frankfort*, the court explained that an "IIED claim is not subsumed by [a] negligence claim" where the defendants argued, as Defendants do here, that, "because [the

plaintiff] has pled a claim of negligence, he cannot alternatively plead a claim of IIED because any damages he is owed due to emotional distress would be compensated under his negligence claim." No. 3:21-CV-00013-GFVT, 2022 WL 701009, at *3 (E.D. Ky. Mar. 8, 2022). Citing the Kentucky Supreme Court's decision in *Childers v. Geile*, 367 S.W.3d at 582, the *Thurman* court explained that "while IIED is a gap-filler tort, it is also a stand-alone tort under the right facts. Accordingly, while there can be only one recovery on a given set of facts, IIED can be pled alternatively to negligence." *Thurman*, 2022 WL 701009, at *3 (cleaned up). That court therefore concluded that the plaintiff could plead both negligence and IIED, but correctly noted he could only *recover* damages for one claim or the other. *See id.* ("As a result, if discovery indicates that there are not separate instances in which either intention or negligence singularly led to his harm, one claim may be subject to dismissal. But dismissal at this point in litigation is not warranted.").

Similarly, in *Glass v. Franklin Cnty., Kentucky*, the same court denied a motion to dismiss a "gap-filler" IIED claim and explained, "[plaintiff] may plead both negligence and IIED, she just may not prevail on both." No. 3:19-CV-00051-GFVT, 2020 WL 3086602, at *7 (E.D. Ky. June 10, 2020). The court further noted that "[w]hether and on which claims she might prevail is not an issue at this stage of litigation" so long as both claims are sufficiently pleaded. *Id.*; *see also Reece v. Shelby Cnty., Kentucky*, No. 3:16-CV-00069-GFVT-EBA, 2021 WL 1034855, at *31 (E.D. Ky. Mar. 17, 2021) (deeming "premature" defendants' argument that "the [plaintiff's] IIED claim fails as a matter of law based on the existence of the more 'traditional common law tort' of negligence" and explaining plaintiff "may plead both negligence and IIED, he just may not prevail on both"); *Holliday v. Leigh*, No. 2:17-CV-113-WOB-CJS, 2020 WL 3217666, at *11 (E.D. Ky. June 15, 2020) (declining to dismiss IIED claim as a "gap-filler" where defendants "insist[ed] that [the plaintiff's] IIED claim should be dismissed because she can recover emotional distress damages if

- 15 -

her § 1983 claims succeed" and holding the claim should proceed unless and until another claim actually provided the same recovery).

The Court employs the same rationale here. As the allegations in Plaintiff's Amended Complaint suggest, constitutional and traditional state law torts are available to address the claimed emotional distress. However, as Plaintiff notes, her intentional and negligent infliction of emotional distress claims "are plead in the alternative," [R. 11, p. 2], which, as the Court has already stated, is perfectly allowed.

As stated, because Plaintiff may plead in the alternative, survival of her IIED and NIED claims at this stage turns on whether she has pleaded facts sufficient to support them. The Court finds that she has, and observes that Defendants make no arguments to the contrary. "To prove a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: '(1) intentional or reckless conduct; (2) that was outrageous or intolerable and offends against the generally accepted standards of decency and morality; (3) which caused emotional distress; and (4) the distress was severe.'" *Juillerat v. United States*, No. 3:16-CV-00276-TBR, 2017 WL 4927677, at *10 (W.D. Ky. Oct. 31, 2017), aff'd sub nom. *Juillerat v. Mudd*, 735 F. App'x 887 (6th Cir. 2018) (quoting *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 293–94 (Ky. Ct. App. 2009)). "To prove negligent infliction of emotions distress, a plaintiff must first prove the elements of a standard negligence claim, meaning 1) duty, 2) breach, 3) causation, and 4) damages, and then, as with an IIED claim, must demonstrate 5) severe emotional injury." *Id.* at *11 (citing *Osborne v. Keeney*, 399 S.W.3d 1, 17–18 (Ky. 2012)).

In her Amended Complaint, Plaintiff alleges that before his death, O'Hara "was nauseous, vomiting, [had] a blood pressure of 80/30 with labored breathing" and that, "[d]espite numerous requests for medical attention and hospitalization by Mr. O'Hara and others, his needs were

ignored" for at least several hours and possibly overnight before he died the following day. [R. 10, ¶¶ 12, 13, 14]. The Amended Complaint also alleges the guards and medical personnel "ignored pleas for help." *Id.* at ⁋ 28. Accepting these facts as true, as is required at the pleading stage, the Court finds that allowing an inmate to suffer with life-threatening symptoms while he and other inmates pleaded for someone to render aide could constitute "outrageous or intolerable" conduct which "offends against the generally accepted standards of decency and morality." *Juillerat*, 2017 WL 4927677, at *10. These actions, and others outlined in the Amended Complaint, could certainly cause severe emotional distress to the dying inmate, and would appear at least reckless, if not intentional. *Id.* The Court therefore finds that Plaintiff has sufficiently alleged facts supporting all elements of her IIED claim.

Likewise, the same facts support a valid NIED claim pleaded in the alternative. Accepting the well-pleaded factual allegations in the Amended Complaint as true, Plaintiff has pleaded facts sufficient to state a valid negligence claim and, coupled with the facts that make up her IIED claim, she has stated a valid NIED claim. For these reasons, the Court will deny Defendants' motion with respect to Count III, Intentional Infliction of Emotional Distress, and Count VII, Negligent Infliction of Emotional Distress, and will decline to dismiss those claims at this juncture.

### 3. Negligent Training and Supervision (Counts VI and VIII)[3]

As stated, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to survive a Rule 12(b)(6) motion to dismiss. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant

---

[3] The Court notes that Defendants have nor raised the issue of qualified immunity with respect to Counts V, VI, or VIII, and the Court therefore does not consider any possible entitlement thereto.

is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Plaintiff's Amended Complaint alleges, in Count VI, that "the failure to provide adequate medical treatment to Phillip O'Hara as set forth above was a result of a pattern or practice of failing to provide adequate medical treatment to detainees/inmates at the Detention Center," which "developed as a result of Defendant Mosely's failure to properly train staff or his provision of inadequate training to staff pertaining to provision of medical services to detainees/inmates at the Detention Center" and "is manifest in the acts and omissions of Defendant King." [R. 10 (Amended Complaint), ¶¶ 49, 50]. Similarly, in Count VIII, Plaintiff alleges, "Defendant Mosely had a duty to adequately supervise Detention Center employees and a duty to ensure that Detention Center policies and procedures are carried into effect to protect Phillip O'Hara and other detainees/inmates from harm," and that his "failure to adequately supervise resulted in the errors and omissions by Defendant King." *Id.* at ¶¶ 56, 57.

"Kentucky's recognition of torts based upon negligent hiring, negligent training, negligent supervision, and negligent retention is well established." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n. 10 (Ky. 2014). These claims "focus on the direct negligence of the employer which permitted an otherwise avoidable circumstance to occur." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009). "To succeed on a claim for negligent training and supervision, the plaintiff must establish that (1) the employer knew or had reason to know of the risk that the employee created; (2) the employee injured the plaintiff; and (3) the hiring, supervision and/or retention of the employee proximately caused the injury." *Short v. Marvin Keller Trucking, Inc.*,

570 F. Supp. 3d 459, 467 (E.D. Ky. 2021) (citing *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005)). Thus, "an employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003).

Plaintiff's Amended Complaint alleges, and the Court accepts as true for purposes of this analysis, that on October 20, 2021, O'Hara began feeling ill and Defendant King was called to render aide. [R. 10 (Amended Complaint), ¶ 13]. O'Hara was nauseous, vomiting, had a blood pressure of 80/30, and was experiencing labored breathing. *Id.* at ¶ 14. No testing was performed, and no ultrasound ordered. *Id.* at ¶ 15. O'Hara was not transferred to a clinic or hospital to have any tests performed, and "no record indicates he was fully evaluated for possible life-threatening conditions." *Id.* at ¶ 16. Although LCCC has 24/7 video surveillance monitoring in the cells where inmates are housed, "O'Hara continued to be ill and no record of contact with employees or healthcare providers was available." *Id.* at ¶ 18. According to Plaintiff, no records exist or were made available that indicate "contact between the medical providers, guards, or employee of LCCC and Phillip O'Hara even though reports were made to guards and medical personnel of his distress by his mother and inmates." *Id.* at ¶ 19. Ultimately, after O'Hara collapsed, "a 911 call from the jail was made, and outside records indicate that healthcare professionals began CPR prior to EMT's arriving but jail records were not provided showing the contacts that were reported." *Id.* at ¶ 20.

Plaintiff submits that O'Hara "should have been transferred to a hospital by Chastity King but instead was left to go into cardiac arrest with no one watching or reviewing his condition regularly." *Id.* at ¶ 23. Plaintiff further notes that she received no records documenting the circumstances surrounding O'Hara's collapse and subsequent cardiac arrest. *Id.* at ¶ 21. "This lack

of records and provision of services," Plaintiff believes, "is indicative of the medical provider ignoring serious conditions plainly evident and not giving the time and consideration to a seriously ill person." *Id.* at ¶ 22. More broadly, Plaintiff alleges that LCCC "does not have sufficient facilities and medical staff to take appropriate care of the inmates lodged there and specifically, Phillip O'Hara," and that "Jailer Mosley chose to accept inmates knowing that LCCC does not have the capability of providing care to the inmates and failing to appropriately transfer the inmates when they are in obvious distress." *Id.* at ¶¶ 24, 25.

These allegations, while extremely troubling, do not provide sufficient factual matter to state claims for negligent hiring, training, or supervision against Defendant Mosley as to his training and supervision of Defendant King.[4] First, the Amended Complaint contains no specific allegations of Mosley's concrete failure related to Defendant King, but rather includes only general allegations that he "fail[ed] to properly train staff" and "fail[ed] to adequately supervise." [R. 10 (Amended Complaint), ¶¶ 50, 57]. Further, and as argued by Defendants, the Amended Complaint does not allege any prior misconduct by Defendant King and, consequently, that Mosley knew of and disregarded that misconduct. The Court agrees with Defendants that, absent such factual allegations, Plaintiff has failed to plausibly allege that "the defendant knew or had reason to know of the employee's harmful propensities," a crucial element of her negligent supervision claims. *Dukes v. Mid-E. Athletic Conf.*, 213 F. Supp. 3d 887, 890–91 (W.D. Ky. 2016); *see also Napper*

---

[4] To be sure, as Defendants concede in their reply, Plaintiff has certainly alleged sufficient factual matter to state a claim for constitutional violations under under 42 U.S.C. § 1983. "[A] municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)). The Court's ruling on the negligent training and supervision claims with respect to Defendant King have no bearing on the other counts that have been sufficiently pleaded.

*v. Hankison*, 617 F. Supp. 3d 703, 755 (W.D. Ky. 2022) ("Past negligent acts must pre-date the events in controversy in order for a court to impute knowledge to the supervisor."). And although the Court agrees with the merits of Defendants' position, the Court also notes that Plaintiff has failed to respond to this argument, either in her original or supplemental response, and therefore failed to oppose the Defendants' arguments on this point. *See England v. Perkins*, No. 1:21-CV-00048-GNS, 2022 WL 2195207, at *6 (W.D. Ky. June 17, 2022) ("England does not respond to Defendants' argument regarding her failure to properly allege a claim for unreasonable search and seizure under the Fourth Amendment and has therefore waived the claim."); *see also* Joint Local Civil Rule 7.1.(c) ("Failure to timely respond to a motion may be grounds for granting the motion."); *Scott v. State of Tenn.*, 878 F.2d 382, 382 (6th Cir. 1989) (unpublished table decision) (noting when a plaintiff "fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived); *Butler v. City of Cincinnati*, No. 1:17-CV-604, 2020 U.S. Dist. LEXIS 132032, at *29, 2020 WL 4284907 (S.D. Ohio July 27, 2020) ("Plaintiff does not respond to this argument, and the Court will construe his silence as a concession.") (internal citation omitted).

Moreover, "officials have no vicarious liability for acts of subordinates in which they are not directly involved." *Bd. Of Trust. Of the Univ. of Kentucky v. Hayes*, 782 S.W.2d 609, 615 (Ky. 1990), overruled on other grounds by *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001); *see also Reed v. Speck*, 508 F. App'x 415, 421 (6th Cir. 2012) ("To succeed on a failure to train or supervise claim, a plaintiff must show that the supervisor encouraged the specific incident of misconduct or

in some other way directly participated in it.") (internal quotation marks omitted). Here, because Plaintiff has failed to allege either that Defendant Mosley knew of any harmful propensities of Defendant King or that Mosley was himself directly involved in any harmful acts, Plaintiff's negligent training and supervision claims fail as they relate to Defendant King's alleged actions and inaction. *See Virgil v. City of Newport*, No. CV:16-224-DLB-CJS, 2018 WL 344986, at *17 (E.D. Ky. Jan. 9, 2018), aff'd, 745 F. App'x 618 (6th Cir. 2018) (granting motion to dismiss negligent training and supervision claim because "[i]n the absence of an allegation that the [defendant] was negligent in its supervision or training of [its officer] *and* knew of the risk that such negligence posed, [the plaintiff] cannot maintain a plausible negligent-supervision claim against the [defendant]") (emphasis added). For these reasons, the Court will grant Defendants' request to dismiss Plaintiff's negligent training and supervision claims against Defendant Mosley in Counts VI and VIII.

### B.  Defendants' Request to Bifurcate and Hold in Abeyance

Lastly, Defendants request that the Court bifurcate and hold in abeyance Plaintiff's claims for negligent hiring and/or staffing (Count V) and negligent training and supervision (Counts VI and VIII) against Defendant Mosley. As a preliminary matter, because the Court will dismiss Counts VI and VIII, it will deny Defendants' request to bifurcate and hold those claims in abeyance as moot.

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The Sixth Circuit has held that "[t]he decision whether to try issues separately is within the sound discretion of the court[.]" *Nelson v. Columbia Gas Transmission, LLC*, 808 F. App'x. 321, 329 (6th Cir. 2020)

(quoting *Bath & Body Works, Inc. v. Luzier Personalized Cosms., Inc.*, 76 F.3d 743, 747 (6th Cir. 1996)). "Although bifurcation of the trial does not necessarily require bifurcation of discovery, the decision to stay [] discovery is within the discretion of the trial court." *Riedling v. Motorists Ins. Grp.*, No. CV-11-47-DLB, 2011 WL 13228003, at *2 (E.D. Ky. June 8, 2011) (cleaned up).

Defendants suggest the Court should bifurcate for trial purposes, and hold in abeyance for discovery purposes, Plaintiff's supervisory claims against Defendant Mosley. [R. 7-1, pp. 7–8]. For support, they rely on *Lake Cumberland Reg'l Hosp., LLC v. Adams*, in which the Kentucky Supreme Court noted "best practice involves bifurcating" trials where claims against a hospital hinged on whether its physician was negligent. 536 S.W.3d 683, 697 (Ky. 2017). The court explained that "[b]ifurcation allows for clear presentation of the issues to the jury as well as responsible use of judicial resources. If the plaintiff does not prevail in the malpractice action against the physician, a subsequent trial against the hospital is neither necessary nor warranted." *Id.* But *Lake Cumberland* only discussed bifurcating for trial, and not discovery, purposes. Defendants attempt to overextend this logic and suggest discovery should not commence on the supervisory claims until "a determination has been made regarding the alleged negligence of the individual Defendants." [R. 7-1, p. 8]. If the goal of bifurcation is judicial efficiency, Defendants' suggestion runs counter to that goal.

Defendants cite no instance where another court has bifurcated claims of this type at the pleading stage and stayed discovery on the bifurcated claim. To the contrary, in another factually analogous case out of this district, the court denied a motion to bifurcate the plaintiff's negligent hiring, training, retention, supervision, and entrustment claim. *See Oaks v. Wiley Sanders Truck Lines, Inc.*, No. CIV. A. 07-45-KSF, 2008 WL 4149635, at *1 (E.D. Ky. Sept. 4, 2008). There, the defendants argued bifurcating the supervisory claim would "decrease possible prejudice" to the

- 23 -

defendant and "serve the interests of efficiently resolving the claims[.]" *Id.* The court disagreed and explained that the need to litigate the supervisory claim would not be totally eliminated by resolving any other claim in the case, and that "bifurcating these proceedings will not preserve judicial economy, will have little effect on the parties in such a short trial and is unnecessary to avoid prejudice because a limiting instruction can cure any potential prejudice." *Id.* at *2. The same rationale counsels against bifurcation here.

Moreover, for the reasons discussed above, the Court finds that the facts underlying Plaintiff's negligence claim in Count V may be relevant to her other claims, as many of the facts supporting her various claims overlap and involve the same parties, actions, inactions and timeframe. *See Duggan v. The Vill. of New Albany*, No. 2:08-CV-814, 2009 WL 2132622, at *4 (S.D. Ohio July 10, 2009) ("[B]ecause the lines between these claims are somewhat blurred in this case, any bifurcation of discovery would inevitably lead to more litigation about where the line between permissible discovery and deferred discovery would be drawn, and would create inefficiencies such as multiple depositions of the same witnesses."); *Robinson v. Shelby Cnty., Kentucky*, No. 3:17-CV-00097-GFVT, 2021 WL 5889528, at *4 (E.D. Ky. Dec. 13, 2021) (noting "convenience and economy do not justify bifurcation" where plaintiffs "raises many overlapping claims against Defendants"). The parties would therefore not be served by bifurcation of Count V because discovery on that claim could involve the same or similar information as other claims in this case. For these reasons, the Court, in its discretion, will deny Defendants' request to bifurcate discovery as to that claim.

Lastly, the Court finds it is premature at this stage to consider whether trial bifurcation is appropriate. *See Mayer v. Cuyahoga Cnty.*, No. 1:19-CV-2620, 2021 WL 164216, at *2 (N.D. Ohio Jan. 19, 2021) ("First, regarding bifurcation of trial, at this stage of the proceedings, the

motion is premature. Not only is there not a trial date, but the parties have various discovery disputes. Without a more complete picture of the state of the record, the Court is unable to determine whether bifurcation of the trial as Defendants request is appropriate or not."). The Court will therefore deny Defendants' request for bifurcated trials without prejudice.

## III.   CONCLUSION

For the reasons discussed herein, **IT IS HEREBY ORDERED** as follows:

A.      Defendants' Motion to Dismiss, Bifurcate, and Hold in Abeyance [**R. 7**] is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as to the following claims, which are **DISMISSED**:

> a.   Count I against all Defendants except Defendant Mosley in his official capacity.
>
> b.   Counts II and V against Defendants Laurel County and LCCC, and against Defendants Mosley and King in their official capacities only.
>
> c.   Count IV against LCCC, Defendants Mosley and King in their official capacities, and Certain Unidentified Employees of LCCC.
>
> d.   Count VI and VIII against Defendant Mosley.
>
> e.   Count IX against all Defendants.

B.      The Motion is **DENIED** as to the following claims, which **SHALL PROCEED**:

> a.   Count I against Defendant Jamie Mosley in his individual capacity.
>
> b.   Counts II and V against Defendants Mosley and King in their individual capacities, and against Certain Unidentified Employees of LCCC.
>
> c.   Count IV against Laurel County and Defendants King and Mosley in their individual capacities.
>
> d.   Counts III and VII against all Defendants except LCCC.

C.      The Court will **DENY** Defendants' Motion to Dismiss Count II and Count V of the Amended Complaint **without prejudice** and **with leave to refile within thirty days of entry of this Order,** if, upon further review, Defendants still maintain that a Certificate of Merit is required with respect to Plaintiff's claims in Count II and/or Count V. Normal response and reply times shall apply. Any renewed motion may address only Count II and/or Count V, must be properly supported by relevant case law, and shall address whether the certificate is required, and, if so, whether 411.167(5)'s safe harbor applies. **If the Defendants elect not to renew their motion to dismiss with respect to Count II and/or Count V within thirty days, the Court will construe the lack of a renewed motion as conceding that a Certificate of Merit is not required for Count II and/or Count V under the facts of this case. Defendants shall also address whether O'Hara's medical records in their possession have been provided to Plaintiff at this juncture.**

D.      Defendants' request to bifurcate and hold in abeyance discovery related to Count V is **DENIED**. Defendants' request to bifurcate the trial of Count V is **DENIED without prejudice** as premature. Defendants' request to bifurcate and hold in abeyance Counts VI and VIII is **DENIED as moot**.

This the 5th day of September, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

- 26 -